DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

REEFCO SERVICES, INC., )
)
Plaintiff, )
)
v. )
)
GOVERNMENT OF THE VIRGIN ISLANDS )
and VIRGIN ISLANDS BUREAU OF )
INTERNAL REVENUE, )
)
Defendants. )
_____ )

Civil No. 2014-110

ATTORNEYS:

**Alexander Golubitsky, Esq.**
Garvey Schubert Barer
Seattle, WA
    *For the Reefco Services, Inc.,*

**Claude Walker, AG**
**Carol Thomas-Jacobs, AAG**
V.I. Department of Justice
St. Thomas, U.S.V.I.
    *For the Government of the Virgin Islands and the Virgin*
    *Islands Bureau of Internal Revenue.*


**MEMORANDUM OPINION**


**GÓMEZ, J.**

    Before the Court is the amended complaint of Reefco

Services, Inc. The parties to this action previously agreed to

try this matter on the papers. The Court, having considered the

parties' various pleadings, exhibits, affidavits, and the
arguments of counsel, now enters Judgment pursuant to Rule 52(a)
of the Federal Rules of Civil Procedure.

## I.   FACTUAL AND PROCEDURAL HISTORY

Reefco Services, Inc. ("Reefco") is a corporation organized
in the United States Virgin Islands. Reefco is engaged in the
marine refrigeration business. Reefco installs and provides
repair services for refrigeration units, air conditioning units,
ice markers, and water makers on boats. The Virgin Islands
Bureau of Internal Revenue ("VIBIR") is the agency of the
Government of the Virgin Islands responsible for administering
local tax laws.

Under Virgin Islands law, certain items shipped into the
United States Virgin Islands are subject to an excise tax, which
is collected by the VIBIR. Among other things, "boats, boat
engines, and boat parts" are exempt from excise taxes. *See* Act
No. 4740, 1982 V.I. Sess. Laws 135-36, as amended by Act No.
6008, 1994 V.I. Sess. Laws 161. On a number of occasions dating
back to 2011, Reefco paid excise taxes on various items it
imported into the United States Virgin Islands to be installed
on boats. Reefco contends that these items are boat parts and
not subject to an excise tax. Reefco also contends that the
excise tax violates the Commerce Clause.

On December 16, 2014, Reefco filed a complaint against the Government of the Virgin Islands and the VIBIR (collectively, the "GVI"). On March 13, 2015, Reefco filed an amended complaint (the "Amended Complaint").

The Amended Complaint asserts five counts. Count One asserts a claim for an unconstitutional taking. Count Two asserts that the excise tax violates the Commerce Clause. Count Three asserts that the excise tax violates the Import/Export Clause. Count Four asserts a claim for a refund of excise taxes paid. Count Five also asserts a claim for an unconstitutional taking.

On April 20, 2015, the GVI moved to dismiss the Amended Complaint. The Court granted GVI's motion to dismiss in part and denied it in part. The Court granted the motion with respect to Counts Two and Three. The Court also granted the motion with respect to Counts One and Five insofar as those counts raised Due Process claims. The Court denied the motion to dismiss with respect to Count Four. The Court also denied the motion with respect to Counts One and Five insofar as those counts asserted violations of the Takings Clause.

On April 12, 2017, the parties appeared before the Magistrate Judge for a telephone conference. At that conference, the parties agreed to submit the remaining issues for a decision

on the papers. On May 2, 2017, the Magistrate Judge entered an

order vacating the trial setting in this matter.

## II.  DISCUSSION

### A. Reconsideration of Dismissal of Count Two of the Amended Complaint.

Count Two of the Amended Complaint sought a declaratory

judgment declaring that "the excise tax is facially

unconstitutional under the Commerce Clause as the excise tax

discriminates against interstate commerce." *Am. Compl.*, ECF No.

16, Exh. 2 at p. 6. Reefco asserted its Commerce Clause claim

under 42 U.S.C. § 1983 ("Section 1983") and *Bivens v. Six*

*Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388

(1971). In a March 31, 2016, order, the Court dismissed Count

Two as it was deficient under Section 1983. Morover, the *Bivens*

claim asserted by Reefco was unavailable as a matter of law. The

Court now finds it appropriate to re-examine that decision.

Reefco brought its claims against the Government of the

Virgin Islands and the VIBIR. Section 1983 provides a cause of

action against a "*person*" who violates a plaintiff's

constitutional rights. *See* 42 U.S.C. § 1983 (emphasis added).

With respect to territorial officials, Section 1983 permits a

cause of action against a person operating under color of

territorial law for prospective injunctive relief. 42 U.S.C. §

1983; *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); see

also *McCauley v. Univ. of the Virgin Islands,* 618 F.3d 232, 240–41 (3d Cir.2010) (explaining that, under § 1983, a plaintiff "cannot seek money damages" but may "seek prospective injunctive relief" against territorial officials in their official capacities).

Significantly, a territory is not a person under Section 1983. *Ngiraingas v. Sanchez*, 495 U.S. 182, 191-92 (1990) ("It is evident that Congress did not intend to encompass a Territory among those 'persons' who could be exposed to § 1983 liability."). Similarly, a territorial agency is not a person under Section 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989) (holding that a state agency was not a person for purposes of Section 1983).

If an entity is not a person as contemplated by Section 1983, no Section 1983 claims may be brought against that entity under Section 1983 seeking damages, *Monroe v. Pape*, 365 U.S. 167, 192 (1961)(abrogated on other grounds), or declaratory or injunctive relief, *City of Kenosha, Wis. v. Bruno*, 412 U.S. 507, 512-14 (1973)(abrogated on other grounds). As such, no Section 1983 claim is available against either the Government of the Virgin Islands or the VIBIR.

In *Bivens*, the Supreme Court held that, under certain circumstances, the Constitution itself provides for a cause of

action to recover damages for constitutional violations. *See*

*Bivens*, 403 U.S. at 389. "A *Bivens* action, which is the federal

equivalent of the § 1983 cause of action against state actors,

will lie where the defendant has violated the plaintiff's rights

*under color of federal law*." *Brown v. Philip Morris Inc.*, 250

F.3d 789, 800 (3d Cir. 2001) (emphasis added). Thus, a proper

defendant to a Bivens action is a "federal officer[], acting

under color of federal law." *See Salazar v. U.S. Atty. Gen.*, 476

Fed. App'x 383, 385 (11th Cir. 2012) (quoting *Abella v. Rubino,*

*63* F.3d 1063, 1065 (11th Cir.1995)); *see also Murphy v. Bloom*,

443 Fed. App'x 668, 669 (3d Cir. 2011) ("*Bivens* recognized a

private cause of action to recover damages against federal

actors for constitutional violations, similar to the cause of

action against state actors provided by 42 U.S.C. § 1983."). The

GVI and the VIBIR are not federal actors. Accordingly, a *Bivens*

action is not an appropriate vehicle for Reefco's claims. *See*

*Morales v. City of New York*, 752 F.3d 234, 237 (2d Cir. 2014)

("There is no dispute that Morales's claims against the NYPD

defendants, who are State actors, were properly construed under

§ 1983."); *Abuhouran v. Soc. Sec. Admin.*, 291 Fed. App'x 469,

473 (3d Cir. 2008) ("State actors cannot be sued under . . .

*Bivens* . . . .").

A Commerce Clause claim, however, does not require a procedural vehicle such as Section 1983. Rather, such claims may be asserted directly under the Constitution. *See Dennis v. Higgins*, 498 U.S. 439, 447 (1991) (explaining that "individuals injured by state action that violates . . . the [dormant] Commerce Clause may sue and obtain injunctive and declaratory relief" directly under the Constitution). In this light, the Court finds it necessary to reconsider its decision dismissing Count Two of the Amended Complaint and revive that count.[1]

---

[1]     Notice and opportunity to respond are generally required before a court dismisses a claim *sua sponte*. Similarly, notice and opportunity to respond should generally be afforded before a court *sua sponte* reinstates a previously dismissed claim and proceeds to decide that claim on the merits. There are, however, certain circumstances under which courts may take such action without notice to the parties. *See Scholastic Entm't, Inc. v. Fox Entm't Grp., Inc.*, 336 F.3d 982, 985 (9th Cir. 2003)(affirming the district court's *sua sponte* dismissal of counterclaims for lack of subject matter jurisdiction because there was no surprise or unfair prejudice when the parties had previously "extensively briefed the issue of subject matter jurisdiction as a result of . . . [a] previous dismissal without prejudice of . . . [the plaintiff's] claims"); *cf. Gibson v. Mayor & Council of City of Wilmington*, 355 F.3d 215, 222 (3d Cir. 2004) (affirming a district court's grant of summary judgment in favor of a non-moving party without notice when there was a fully developed record; no prejudice resulted from the lack of notice; and summary judgment was granted based on a purely legal issue).
     With respect to the Court's reconsideration of its dismissal of Count Two, the issues relevant to that decision were fully briefed in GVI's motion to dismiss the Amended Complaint and Reefco's opposition to that motion. With respect to passing on the merits of Count Two, Reefco filed a trial brief arguing, in part, that it was entitled to a refund of excise taxes paid under Count Four because the excise tax violates the Commerce Clause. Having been provided notice of this theory of recovery, the GVI did not address the merits of the argument, asserting only that it was raised "for the first time in [Reefco's] Trial Brief." *See* ECF No. 76 at 1 n.1. Count Four of the Amended Complaint, however, asserted that Reefco was entitled to a refund because the VIBIR "is prohibited from collecting taxes that are prohibited by the Constitution." *See* ECF No. 16, Exh. 2 at ¶ 72. Because the parties have had the opportunity to brief whether the excise tax violates the Commerce Clause, the Court finds that it is appropriate to address the merits of Count Two.

B. Merits of Count Two

Reefco was assessed excise taxes in accordance with 33 V.I.C. § 42 ("Section 42") for items that Reefco imported into the. Section 42 was passed by the Virgin Islands Legislature in 1959. *See* Act No. 473, 1959 V.I. Sess. Laws 76, at 77. Ostensibly, it requires the payment of "an excise tax on all articles, goods, merchandise or commodities manufactured in or brought into the Virgin Islands for personal use" or "any . . . business use or purpose" unless the items are "specially taxed, exempted or excluded." *See* 33 V.I.C. § 42(a). Count Two seeks a declaratory judgment declaring that Section 42 violates the Commerce Clause.

"The Commerce Clause grants to Congress the power '[t]o regulate Commerce . . . among the several States.'" *Norfolk S. Corp. v. Oberly*, 822 F.2d 388, 392 (3d Cir. 1987) (quoting U.S. Const., Art. 1, § 8, cl. 3). More than an affirmative grant of power, "an implied requirement" of the Commerce Clause--known as the "dormant Commerce Clause"--also places certain limitations on the States and territories. *See Cloverland-Green Spring Dairies, Inc. v. Pennsylvania Milk Mktg. Bd.*, 462 F.3d 249, 261–62 (3d Cir. 2006). "The dormant Commerce Clause prohibits the states from imposing restrictions that benefit in-state economic interests at out-of-state interests' expense, thus reinforcing

'the principle of the unitary national market." *Tri-M Grp., LLC v. Sharp*, 638 F.3d 406, 426 (3d Cir. 2011) (quoting *Cloverland-Green Spring Dairies, Inc.,* 298 F.3d at 210).

### 1. Congressional Consent

"Congress can authorize states to impose restrictions that the dormant Commerce Clause would otherwise forbid. When Congress so chooses, state actions which it plainly authorizes are invulnerable to constitutional attack since Congress's commerce power in such instances is not dormant, but has been exercised by that body." *Tri-M Grp., LLC*, 638 F.3d at 430 (quotation marks and citations omitted). "[C]ongressional consent . . . is only evidenced 'where Congress has 'affirmatively contemplated otherwise invalid state legislation, and where state or local government action is specifically authorized by Congress.'" *Id.* (alterations omitted) (quoting *Norfolk So. Corp.,* 822 F.2d at 393). Such contemplation or authorization must be "expressly stated," *Sporhase v. Nebraska*, 458 U.S. 941, 959 (1982) (internal quotation marks omitted), and "made unmistakably clear," *S.-Cent. Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 91 (1984). "[T]he state has the 'burden of demonstrating a clear and unambiguous intent on behalf of Congress to permit the discrimination against interstate

commerce.'" *Tri-M Grp., LLC*, 638 F.3d at 430 (quoting *Wyoming v. Oklahoma,* 502 U.S. 437, 458 (1992)).

In 1980, Congress passed Public Law 96-205. Section 405 of Public Law 96-205 ("Section 405") provides: "Any excise taxes levied by the Legislature of the Virgin Islands may be levied and collected as the Legislature of the Virgin Islands may direct as soon as the articles, goods, merchandise, and commodities subject to said tax are brought into the Virgin Islands." Pub. L. No. 96–205, § 405, 94 Stat 84 (March 12, 1980). Expressing support for Section 405, Senator Johnson stated:

> The . . . amendment . . . would provide specifically that the Virgin Islands may levy excise taxes on articles as soon as they are brought into the Virgin Islands. This authority already exists and has existed so long as the Virgin Islands has been authorized to collect excise taxes. The amendment is offered only to prevent needless litigation and confirm the already authorized powers of the Virgin Islands government. I would note that theis provision has been requested by the Governor of the Virgin Islands with the support of the administration in order to clarify the existing authority and does not represent a new grant of authority whatsoever.

Subcommittee on Nat. Parks and Insular Affairs, 96th Cong., *Legislative History of the Omnibus Insular Areas Act of 1979–1980*, at 173 (1980). Representative Evans indicated that Section 405 "allows for the collection of any excise taxes levied by the Virgin Islands Legislature upon the date of importation of the

goods into the Virgin Islands rather than at a later date." *Id.*
at 171.

Subsequently, in 1982, Congress passed Public Law 97-357.
In relevant part, that law amended Section 405 of Public Law 96-
205, to provide that "[t]he officials of the Customs and Postal
Services of the United States are directed to assist the
appropriate officials of the United States Virgin Islands in the
collection of [excise taxes imposed on items as they are brought
into the Virgin Islands]." Pub. L. No. 97-357, § 302, 96 Stat
1705 (Oct. 19, 1982). The Senate report to this amendment
explained:

> The need for [this] provision arose as a result of
> section 405 of Public Law 96-205 which authorized the
> Virgin Islands to levy excise taxes on goods at the
> point at which the goods entered the territory.
> Officials of the Virgin Islands requested assistance
> from the Postal Service for permission to take down
> the names and addresses from packages. . . . To
> clarify that the authorization is directed at those
> excise taxes levied on goods at the time they are
> brought into the territory, the amendment modifies
> the language of S. 1674 to refer directly to section
> 405 of Public Law 96-205.

S. Rep. 97-372, 4, 1982 U.S.C.C.A.N. 3278, 3281

This legislation and accompanying legislative history
clearly demonstrates that Congress approved the imposition of an
excise tax on certain items. It also demonstrates approval of
the procedure for collecting that tax on items entering the
Virgin Islands, namely "as soon as [they] . . . are brought into

the Virgin Islands." Pub. L. No. 96-205, § 405, 94 Stat 84

(March 12, 1980).

The authority discussed above addresses only the location

that the excise tax could be imposed and the manner it was to be

collected. Nothing suggests that, in doing so, Congress intended

"to alter the limits of state power othertwise imposed by the

Commerce Clause." See *Norfolk S. Corp.*, 822 F.2d at 398 (quoting

*New England Power Co. v. New Hampshire,* 455 U.S. 331, 341

(1982)). Indeed, in a case vacated by the United States Supreme

Court on other grounds, the Third Circuit similarly concluded

that "the fact Congress has authorized the imposition of excise

tax on goods at the time they are imported does not 'constitute

persuasive evidence that Congress consented to the unilateral

imposition of unreasonable burdens on commerce.'" *JDS Realty*

*Corp. v. Gov't of Virgin Islands*, 824 F.2d 256, 261 (3d Cir.

1987), *judgment vacated on other grounds*, 484 U.S. 999 (1988)

(alterations omitted) (quoting *Sporhase v. Nebraska,* 458 U.S.

941, 960 (1982)). The Court is aware of no intervening

legislation from Congress addressing the challenged excise tax,

and sees no reason to come to a different conclusion than the

Third Circuit.

## 2. Validity Under Dormant Commerce Clause

When considering challenges to state laws and regulations under the dormant Commerce Clause, the Court first asks whether the law or regulation "'discriminates against interstate commerce' in its purpose or effect." *Cloverland-Green Spring Dairies, Inc.*, 462 F.3d at 261–62. If so, the Court applies "heightened scrutiny" to the law, *id.*, which "is *per se* invalid save in a narrow class of cases in which the States can demonstrate . . . that it has no other means to advance a legitimate local interest," *Tri-M Grp., Inc.*, 638 F.3d at 427 (internal quotation marks and alterations omitted). "The party challenging the statute has the burden of proving the existence of such discrimination, and the burden then shifts to the state to prove that 'the statute serves a legitimate local purpose, and that this purpose could not be served as well by available nondiscriminatory means.'" *Cloverland-Green Spring Dairies, Inc.*, 462 F.3d at 261(quoting *Maine v. Taylor,* 477 U.S. 131, 138 (1986)).

If the law does not directly discriminate against interstate commerce, the Court "then must balance interests pursuant to *Pike v. Bruce Church, Inc.,* 397 U.S. 137, (1970)." *Heffner v. Murphy*, 745 F.3d 56, 70–71 (3d Cir. 2014). Under the balancing test articulated in *Pike*, a challenged law "must be

upheld unless the burden imposed on interstate commerce is
clearly excessive in relation to the putative local benefits."
*Tri-M Grp., LLC*, 638 F.3d at 427(quoting *Cloverland-Green Spring
Dairies, Inc.,* 298 F.3d at 211).

In *JDS Realty Corp. v. Gov't of Virgin Islands*, 824 F.2d
256 (3d Cir. 1987), JDS, a Virgin Islands corporation, was
denied a refund of excise taxes it had paid from 1977 through
1980 on items JDS had imported into the Virgin Islands. *Id.* at
257. At the time, Section 42 imposed the tax only on items being
imported into the Virgin Islands. *See id.* (citing 33 V.I.C. §
42(a) (1967)). JDS filed suit in the district court, alleging
that the excise tax violated the Commerce Clause. *Id.* The
district court granted JDS's motion for summary judgment, *id.* at
258, but denied JDS money damages because "JDS had passed the
burden of the excise taxes to its customers, *JDS Realty Corp. v.
Gov't of the Virgin Islands*, 852 F.2d 66, 67 (3d Cir. 1988). The
Government of the Virgin Islands appealed, and the Third Circuit
affirmed. *JDS Realty Corp.*, 824 F.2d at 258, 262.

The Third Circuit explained that "[a] cardinal rule of
Commerce Clause jurisprudence is that '[n]o State, consistent
with the Commerce clause, may impose a tax which discriminates
against interstate commerce by providing a direct commercial
advantage to local business." *Id.* at 261 (quoting *Bacchus*

*Imports, Ltd. V. Dias*, 468 U.S. 263, 268 (1984)). "[B]y imposing a tax only on imported goods" but not locally manufactured goods, the excise tax did just that. *Id.* at 261. Indeed, the Third Circuit was "hard pressed to imagine a taxing scheme more patently violative of the Commerce Clause than [the excise taxes under Section 42]." *Id.* at 262. Accordingly, the Third Circuit held that, "[b]ecause the challenged excise tax ha[d] a discriminatory purpose and effect, . . . it violate[d] the commerce clause." *Id.*

The GVI petitioned the U.S. Supreme Court for certiorari. *Gov't of Virgin Islands v. JDS Realty Corp.*, 484 U.S. 999 (1988). The Supreme Court granted the petition, vacated the Third Circuit's judgment, and remanded for the Third Circuit "to consider the question of mootness." *Id.* On remand, the Third Crcuit concluded "that when monetary relief was ultimately denied, th[e] appeal became moot." *JDS Realty Corp.*, 852 F.2d at 67. Because "[n]o relief [wa]s . . . possible in th[e] case," the Third Circuit vacated the district court's judgment and directed this Court to dismiss the case. *Id.*

In 1984, the Virgin Islands amended Section 42 to require the payment of excise taxes on "all articles, goods, merchandise and commodities manufactured in or brought into or manufactured in the Virgin Islands." 33 V.I.C. § 42(a). Section 42b, title

33, of the Virgin Islands Code ("Section 42b") outlines the

"[p]rocedure for collection of excise taxes on foreign imports."

33 V.I.C. § 42b. Section 42c, title 33, of the Virgin Islands

Code ("Section 42c") outlines the "[p]rocedure for collection of

excise taxes on domestic imports." 33 V.I.C. § 42c. No statutory

provision exists outlining the procedures for the collection of

excise taxes on locally manufactured goods. Instead, 33 V.I.C.

42a ("Section 42a") directs to the Director of the Bureau of

Internal Revenue to "promulgate rules concerning procedures for

the valuation of goods and payment of excise taxes on items

manufactured in the Virgin Islands." 33 V.I.C. § 42a(b).

Significantly, however, such regulations were never promulgated.

Last amended in 1983, the regulations currently provide

that "[t]he excise tax applies to all articles, goods,

merchandise, or commodities brought into the Virgin Islands for

use in business, for sale in the course of a trade or business,

for processing or manufacturing, or for any other business use

or purpose," without mentioning items manufactured in the Virgin

Islands. *See* 33-3 V.I. Code R. § 42-2(a). The regulations

provide that "[t]he act of importing goods into the Virgin

Islands for business use constitutes the event which brings the

excise tax into effect." *See* 33-3 V.I. Code R. § 42-3(a).

Valuation for excise tax purposes is determined by reference to

"the cost to the importer." *See* 33-3 V.I. Code R. § 42-6(a)

("The value of articles, goods, merchandise or commodities to be

used in computing the excise tax shall be the cost to the

importer who brings such items into the Virgin Islands plus a

mark-up of five percent."). Finally, while the Regulations lay

out procedures for collecting excise taxes on foreign imports,

*see* 33-3 V.I. Code R. § 42b-1 - 42b-8, and domestic imports, *see*

33-3 V.I. Code R. § 42c-1 - 42c-3, they include no procedures

for collecting excise taxes on local goods.

In sum, the regulations continue to implement the version

of Section 42 that exempted local goods from the excise tax,

without giving effect to the 1984 amendment to Section 42.

Indeed, the enforcement of Section 42 reflects this as

well. In the course of litigating this matter, Reefco deposed

Glenford Hodge ("Hodge"), the Supervisor of Excise Tax for the

VIBIR. After discussing how the VIBIR processed imported items

and how excise taxes were collected on those items, the

following exchange occurred:

> Q. How do you process merchandise that's not
> imported?
> [Hodge]. If it's not imported, then there's no reason
> for us to process it.
> Q. You don't charge a tax on products that aren't
> imported into the --
> [Hodge]. We have no basis to charge a tax on
> something that's not imported into the territory.
> Q. Okay. So if somebody were to make--Well, beer is
> an item that has an excise tax, correct?

> [Hodge]. Yes, sir.
> Q. So a local brewer doesn't pay an excise tax to
> your office?
> [Hodge]. Excise tax is collected on items imported
> into the territory.
> Q. Okay. So the same item, if it were made here and
> not brought in, that has nothing to do with your
> office?
> [Hodge]. If it wasn't imported, then you would have
> not generated a bill f laden. So we have – we don't.
> We don't.

ECF No. 75, Exh. 1 at 23:18-24:14.

In effect, while the 1984 amendment to Section 42 arguably cured the deficiency discussed in *JDS Realty Corp. v. Gov't of Virgin Islands*, the officials responsible for enforcing Section 42 continue to interpret Section 42 as applying only to imported goods. In other words, the GVI ignores the corrective amendment to Section 42 and continues to implement the pre-1984 statute that the Third Circuit held was invalid under the Commerce Clause. *See id.*; *see also Fla. Transp. Servs., Inc. v. Miami-Dade Cty.*, 703 F.3d 1230, 1257 (11th Cir. 2012) (finding "as applied" violation of Commerce Clause where stevedore permit ordinance was arguably constitutional but where agency responsible for issuing permits "failed to follow permit ordinance" and "automatically denied permits to all companies . . . that did not hold permits in the previous year").

This Court encountered a similar situation in *Molloy v. Gov't of the Virgin Islands*, 594 F. Supp. 2d 595 (D.V.I. 2007).

In that case, this Court held that a Virgin Islands tax imposed
only on items brought into the Virgin Islands violated the
dormant Commerce Clause. *See id.* at 597. The tax provided:
"Every individual shall pay a personal use tax on all articles,
goods, merchandise or commodities brought into the Virgin
Islands for personal use and valued, based on the invoice, over
$1,000." *Id.* at 596 (quoting 33 V.I.C. § 60(a) (1997)). This
Court explained that "[i]t is well settled that a state tax
which advantages local business or commerce, in purpose or
effect, at the expense of out-of-state interests violates the
Commerce Clause." *Id.* at 597. If an individual purchased an item
valued over $1,000 in the Virgin Islands, no tax would be
assessed on the item. *Id.* If, however, such an item was
purchased outside the Virgin Islands and brought into the Virgin
Islands, a personal use tax would be levied on the item. *Id.*
This Court concluded that this was "prohibited economic
protectionism" and held that the personal use tax violated the
dormant Commerce Clause. *Id.*

Similarly here, an excise tax is imposed on certain items
that are imported into the Virgin Islands. No excise tax is
levied on similar items that are manufactured in the Virgin
Islands. Like the personal use tax in *Molloy*, this taxing scheme
amounts to "prohibited economic protectionism." *See id.* Like the

Third Circuit in *JDS Reality Corp.*, the Court is "hard pressed
to imagine a taxing scheme more patently violative of the
Commerce Clause" than the taxing scheme the VIBIR has outlined
in its regulations and is currently enforcing. *See JDS Realty
Corp.*, 824 F.2d at 262. The GVI has not asserted any "legitimate
local purpose" for this scheme, let alone evidence or argument
that "this purpose could not be served as well by available
nondiscriminatory means." *See Tri-M Grp., Inc.*, 638 F.3d at 427
(internal quotation marks omitted). Accordingly, the Court holds
that the Section 42--as interpreted and enforced by the GVI--
violates the Commerce Clause.

### C. Count Four of the Amended Complaint

Count Four asserts that Reefco is entitled to a refund of
the $5,287.74 it paid in excise taxes. An individual who is
improperly assessed an excise tax is entitled to a refund of the
taxes paid. *See Island Periodicals, Inc. v. Olive*, 762 F. Supp.
1234, 1235 (D.V.I. 1991); *see also Molloy*, 594 F. Supp. 2d at
598 (declaring personal use tax unconstitutional and ordering
the GVI to refund taxes that defendant paid). The Court has held
that Section 42 violates the Commerce Clause. Any excise tax
assessed under Section 42 was improperly assessed. Accordingly,
Reefco is entitled to a refund of those taxes.

## III. CONCLUSIONS

For the reasons explained above, the Court will enter judgment in favor of the Reefco on Counts Two and Four. The Court will enter judgment in favor of the GVI on Counts One, Three, and Five. An appropriate judgment accompanies this memorandum opinion.


S\_____

**Curtis V. Gómez**
**District Judge**