DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

REEFCO SERVICES, INC.,

        Plaintiff,

        v.

GOVERNMENT OF THE VIRGIN ISLANDS
and VIRGIN ISLANDS BUREAU OF
INTERNAL REVENUE,

        Defendants.

Civil No. 2014-110

ATTORNEYS:

**Alexander Golubitsky, Esq.**
St. Thomas, U.S.V.I.
    *For the Reefco Services, Inc.,*

**Taylor William Strickling**
Marjorie Rawls Roberts, P.C.
St. Thomas, U.S.V.I.
    *For the Reefco Services, Inc.,*

**Claude Walker, AG**
**Carol Thomas-Jacobs, AAG**
V.I. Department of Justice
St. Thomas, U.S.V.I.
    *For the Government of the Virgin Islands and the Virgin Islands Bureau of Internal Revenue.*

## MEMORANDUM OPINION

**GÓMEZ, J.**

Before the Court is the motion of the Government of the Virgin Islands and the Virgin Islands Bureau of Internal Revenue to stay judgment pending appeal. On November 15, 2018, the Court entered an order denying that motion and ordering further

relief. This Memorandum Opinion more fully outlines the reasons for that order.

## I.    FACTUAL AND PROCEDURAL HISTORY

Reefco Services, Inc. ("Reefco") is a corporation organized in the United States Virgin Islands. Reefco is engaged in the marine refrigeration business. Reefco installs and provides repair services for refrigeration units, air conditioning units, ice markers, and water makers on boats. The Virgin Islands Bureau of Internal Revenue ("VIBIR") is the agency of the Government of the Virgin Islands responsible for administering local tax laws.

Under Virgin Islands law--specifically, 33 V.I.C. § 42 ("Section 42")--certain items shipped into the United States Virgin Islands are subject to an excise tax, which is collected by the VIBIR. Among other things, "boats, boat engines, and boat parts" are exempt from excise taxes. *See* Act No. 4740, 1982 V.I. Sess. Laws 135-36, as amended by Act No. 6008, 1994 V.I. Sess. Laws 161. On a number of occasions dating back to 2011, Reefco paid excise taxes on various items it imported into the United States Virgin Islands to be installed on boats. Reefco contends that these items are boat parts and not subject to an excise tax. Reefco also contends that the excise tax violates the Commerce Clause.

On December 16, 2014, Reefco filed a complaint against the Government of the Virgin Islands and the VIBIR (collectively, the "GVI"). On March 13, 2015, Reefco filed an amended complaint (the "Amended Complaint").

The Amended Complaint asserts five counts. Count One asserts a claim for an unconstitutional taking. Count Two asserts that the excise tax violates the Commerce Clause. Count Three asserts that the excise tax violates the Import/Export Clause. Count Four asserts a claim for a refund of excise taxes paid. Count Five also asserts a claim for an unconstitutional taking.

On April 20, 2015, the GVI moved to dismiss the Amended Complaint. The Court granted GVI's motion to dismiss in part and denied it in part. The Court granted the motion with respect to Counts Two and Three. The Court also granted the motion with respect to Counts One and Five insofar as those counts raised Due Process claims. The Court denied the motion to dismiss with respect to Count Four. The Court also denied the motion with respect to Counts One and Five insofar as those counts asserted violations of the Takings Clause.

On April 12, 2017, the parties appeared before the Magistrate Judge for a telephone conference. At that conference, the parties agreed to submit the remaining issues for a decision

on the papers. On May 2, 2017, the Magistrate Judge entered an order vacating the trial setting in this matter.

On September 28, 2018, the Court entered Judgment in this matter. First, the Court reconsidered its previously entered order dismissing Count Two of the Amended Complaint--Reefco's claim that the excise tax violates the Commerce Clause--and vacated that order insofar as it dismissed Count Two. Next, the Court held that Congress had not authorized the Government of the Virgin Islands to enact legislation that discriminated against interstate commerce.

Analyzing the excise tax under the dormant Commerce Clause, the Court observed that, prior to 1984, Section 42 only provided for the payment of excise taxes on items being imported into the Virgin Islands. In 1984, the Government of the Virgin Islands amended Section 42 to require the payment of excise taxes on "all articles, goods, merchandise and commodities manufactured in or brought into the Virgin Islands." 33 V.I.C. § 42(a). Significantly, however, there were no procedural mechanisms in place to collect excise taxes on items manufactured in the Virgin Islands. Moreover, it appeared from the record that the agency responsible for collecting excise taxes, the VIBIR, was unaware that Section 42 applied to locally manufactured goods.

Accordingly, the Court held that Section 42--as interpreted and enforced by the VIBIR--violates the Commerce Clause. The Court entered Judgment in favor of Reefco on Count Two and Count Four of the Amended Complaint. In relevant part, the Judgment read:

> The premises considered, it is hereby
> . . .
> **ORDERED** that 33 V.I.C. § 42--as interpreted and enforced by the Virgin Islands Bureau of Internal Revenue--violates the Commerce Clause; it is further
> **ORDERED** that the Virgin Islands Bureau of Internal Revenue shall **REFUND** improperly assessed excise taxes in the amount of $5,287.74 to Reefco Services, Inc. . . . .

ECF No. 79 at 2.

On October 12, 2018, the GVI filed a notice of appeal. On October 19, 2018, the GVI moved to stay execution of the September 28, 2018, judgment pending appeal.

On November 8, 2018, the Court held a hearing on the GVI's motion to stay. At the hearing, the GVI asserted that, on average, it collected over $20 million dollars in excise taxes a year, and as such, the excise tax was an important source of revenue for the Government of the Virgin Islands. The GVI also asserted that developing and implementing a procedure for the collection of excise taxes on locally manufactured items was a difficult endeavor that would take a great deal of time. The GVI argued that, without a stay of the Court's judgment, it would

suffer irreparable harm because it would be unable to collect excise taxes.

Reefco asserted that the VIBIR had not stopped collecting excise taxes, and that as recently as October 31, 2018, items that Reefco imported had been assessed an excise tax. Subsequently, the GVI admitted it was continuing to collect excise taxes in the manner the Court's Judgment found to be unconstitutional.

At the conclusion of the November 8, 2018, hearing, the Court directed the parties to brief several issues and scheduled an evidentiary hearing on the GVI's motion to stay. On November 15, 2018 the Court held an evidentiary hearing on the GVI's motion to stay. At that hearing, the GVI called Glenford Hodge ("Hodge"), the Supervisor of Excise Tax at the VIBIR, as a witness. Hodge testified that the VIBIR was continuing to collect excise taxes on goods brought into the Virgin Islands.

Specifically, the Court had the following colloquy with Hodge:

> COURT: Mr. Hodge, you were collecting excise taxes in a certain manner before this Court issued its judgment. Correct?
> HODGE: Yes
> COURT: Now, since the Court issued its judgment, have you continued to collect excise taxes?
> HODGE: Yes, we have.
> COURT: Have you changed any collection efforts or your structure since issuance of the Court's judgment?

HODGE: No we haven't.

*Hr'g Test. of Glenford Hodge* at 11:42 P.M. on November 15, 2018.

Hodge also testified that the VIBIR was currently developing procedures for the collection of excise taxes on goods manufactured in the Virgin Islands. While, as of November 15, 2018, the VIBIR was not prepared to collect excise taxes on locally manufactured goods, Hodge anticipated that a system to do so would be in place by December 1, 2018.

At the conclusion of the November 15, 2018, hearing, the Court ruled from the bench and subsequently issued a written order (1) denying GVI's motion to stay; (2) enjoining the GVI "from collecting excise taxes in a manner that violates Commerce Clause principles"; and (3) directing the GVI to "advise the Court if and when it is prepared to collect excise in a manner consistent with the Court's September 28, 2018, Judgment and Memorandum Opinion." ECF No. 93 at 2. This Memorandum Opinion more fully outlines the reasons for that order.

## II. <u>DISCUSSION</u>

Federal Rule of Appellate Procedure 8 provides that litigants "must ordinarily move first in the district court for . . . a stay of the judgment or order of a district court pending appeal." Fed. R. App. P. 8(a)(1)(A). Federal Rule of Civil Procedure 62 ("Rule 62") outlines the procedures for

obtaining a "[s]tay of [p]roceedings to [e]nforce a [j]udgment."

*See* Fed. R. Civ. P. 62. Rule 62(c) provides a mechanism for

seeking a stay of a "judgment that grants, dissolves, or denies

an injunction":

> While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights.

Fed. R. Civ. P. 62(c). Rule 62(d) provides a mechanism for

obtaining a stay with bond:

> If an appeal is taken, the appellant may obtain a stay by supersedeas bond, except in an action described in Rule 62(a)(1) or (2). The bond may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal. The stay takes effect when the court approves the bond.

Fed. R. Civ. P. 62(d).[1]

### III. <u>ANALYSIS</u>

#### A. Motion for Stay Pending Appeal

##### 1. Stays under Rule 62(c) and 62(d)

As an initial matter, the GVI does not specify what

subsection of Rule 62 it brings its motion for a stay under. The

Judgment against the GVI consisted of two forms of relief to

---

[1] Rule 62(a)(1) and (2) are "(1) an interlocutory or final judgment in an action for an injunction or a receivership; or (2) a judgment or order that directs an accounting in an action for patent infringement." Fed. R. Civ. P. 62(a).

Reefco: (1) a declaratory judgment declaring that the enforcement of Section 42 violated the Commerce Clause; and (2) a money judgment ordering the VIBIR to refund to Reefco the excise taxes Reefco paid. At the November 8, 2018, and November 15, 2018, hearings, the GVI made clear that it is only seeking to stay the declaratory judgment.

Rule 62(c) applies to judgments that "grant[], dissolve[], or den[y] an injunction." *See* Fed. R. Civ. P. 62(c). On its face, the September 28, 2018, Judgment does not state that it grants, dissolves, or denies an injunction. As such, Rule 62(c) arguably does not apply.[2]

With respect to Rule 62(d), "[c]ourts have restricted [its] application . . . to judgments for money because a bond may not

---

[2] *See Liberty Mut. Fire Ins. Co. v. Clemens Coal Co.*, No. 14-2332-CM, 2017 U.S. Dist. LEXIS 173666, at *5 (D. Kan. Oct. 19, 2017) (holding that defendant could not obtain stay of judgment that "declared the rights of parties to a contract" and "granted judgment as a matter of law on a negligence counterclaim" under Rule 62(c) because "[t]he plain language of Rule 62(c) indicates that a court may issue a stay under this rule only while an appeal is pending and only if the order or judgment appealed from is an injunction"); *Cont'l Cas. Co. v. Orr*, No. 8:07CV292, 2008 U.S. Dist. LEXIS 105739, at *4 (D. Neb. July 31, 2008) (holding that stay under Rule 62(c) was unavailable for declaratory judgment that declared insurance company's liability "was limited to the $ 2 million per claim limit of the [policy at issue]" because "[s]uch a declaratory judgment is not analogous to an order 'that grants, dissolves, or denies an injunction,'" (quoting Fed. R. Civ. P. 62(c))); *Yankton Sioux Tribe v. S. Missouri Waste Mgmt. Dist.*, 926 F. Supp. 888, 890 (D.S.D. 1996) ("The Court previously held that Rule 62(c), which permits imposition of an injunction pending appeal from a final judgment, does not apply to a declaratory judgment, and the Court now reaffirms that holding."). *But see Fla. ex rel. Bondi v. U.S. Dep't of Health & Human Servs.*, 780 F. Supp. 2d 1307, 1309 (N.D. Fla. 2011) (granting stay of declaratory judgment under 62(c) but failing to address propriety of doing so).

adequately compensate a non-appealing party for loss incurred as a result of the stay of a non-money judgment." *Hebert v. Exxon Corp.*, 953 F.2d 936, 938 (5th Cir. 1992) (collecting cases).[3] Here, the portion of the judgment that the GVI seeks to stay is the declaration that Section 42, as interpreted and enforced by the VIBIR, is unconstitutional. Significantly, that portion of the Judgment is not a judgment for money.[4] As such, Rule 62(c) and Rule 62(d) are not the appropriate vehicles for obtaining a stay in this matter.

## 2. Discretionary Stay

While neither Rule 62(c) nor Rule 62(d) seem to be appropriate vehicles for the relief the GVI seeks, it is well-established that, "[a]part from the Federal Rules of Civil Procedure, federal courts are empowered to temporarily stay the execution of their judgments whenever it is necessary to

---

[3] *See also Donovan v. Fall River Foundry Co.,* 696 F.2d 524, 526 (7th Cir.1982) ("The reference in Rule 62(d) to supersedeas bond suggests that had the framers thought about the point they would have limited the right to an automatic stay to cases where the judgment being appealed from was a 'money judgment.'"); *Bridgefield Cas. Ins. Co. v. River Oaks Mgmt., Inc.*, No. CIV.A. 12-2336, 2013 WL 5934434, at *1 (E.D. La. Nov. 4, 2013) ("[A] Court ordinarily lacks authority to stay a declaratory judgment pending appeal under 62(d) because such a judgment is non-monetary."); *Yankton Sioux Tribe v. S. Missouri Waste Mgmt. Dist.*, 926 F. Supp. 888, 890 (D.S.D. 1996) ("This case, which involves a declaratory judgment that is nonmonetary, illustrates why Rule 62(d) is applied only to a money judgment or its equivalent.").
[4] The September 28, 2018, Judgment also included a money judgment directing the GVI to refund to Reefco $5,287.74 in excise taxes. At no time during the two hearings on the motion for a stay did the GVI argue or otherwise pursue a stay of execution of this portion of the September 28, 2018, Judgment.

accomplish the ends of justice." *United States v. Denver & Rio Grande W. R. Co.*, 223 F.2d 126, 127 (10th Cir. 1955); *see also Butler v. Ungerleider*, 199 F.2d 709, 710 (2d Cir. 1952) ("The District Court had inherent power in the exercise of a sound discretion to maintain the status quo [by staying proceedings to enforce a judgment]."). That authority is derived from the All Writs Act, 28 U.S.C. § 1651. Accordingly, notwithstanding any limitation on the applicability of Rule 62, the Court holds that it has the inherent authority to stay enforcement of the September 28, 2018, Judgment pending appeal. Having determined that the Court may, in its discretion, issue a stay, the Court will next assess whether the GVI has satisfied its burden for obtaining such a stay here.

"[T]he standard for obtaining a stay pending appeal is essentially the same as that for obtaining a preliminary injunction." *Conestoga Wood Specialities Corp. v. Sec'y of U.S. Dep't of Health & Human Servs.*, No. 13-1144, 2013 WL 1277419, at *1 (3d Cir. Feb. 8, 2013). When considering Rule 62(c) motions, district courts consider four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d
653, 658 (3d Cir. 1991) (quoting *Hilton v. Braunskill,* 481 U.S.
770, 777 (1987)); *see also Hilton v. Braunskill*, 481 U.S. 770,
776 (1987) ("Different Rules of Procedure govern the power of
district courts and courts of appeals to stay an order pending
appeal. Under both Rules, however, the factors regulating the
issuance of a stay are generally the same." (citing Fed. R. Civ.
P. 62(c) and Fed. R. App. P. 8(a))). "[T]he traditional stay
factors contemplate individualized judgments in each case." *Id.*
at 777. "Where the latter three factors favor a stay, an
applicant need only demonstrate a substantial case on the merits
to warrant issuance of a stay." *Martin v. Banco Popular De
Puerto Rico*, No. CIV.2008-109, 2009 WL 2594542, at *2 (D.V.I.
Aug. 19, 2009) (alterations and internal quotation marks
omitted).

The burden to satisfy the four factors lies with the moving
party. *See, e.g.*, *Nken v. Holder*, 556 U.S. 418, 433-34 (2009)
("The party requesting a stay bears the burden of showing that
the circumstances justify an exercise of that discretion."). A
stay pending appeal is an "extraordinary remedy." *El v. Marino*,
722 Fed. App'x 262, 267 (3d Cir.), *cert. denied sub nom. LeJon-
Twin El v. Marino*, 138 S. Ct. 2609 (2018). As such, the moving
party carries a "heavy burden." *Lubow v. U.S. Dep't of State*,

934 F. Supp. 2d 311, 313 (D.D.C. 2013); *see also Conestoga Wood Specialities Corp.*, 2013 WL 1277419, at *1 ("[S]tays [pending appeal] are rarely granted, because in our Court the bar is set particularly high."). The Court will assess, in turn, each of the factors that the GVI must satisfy.

**1. Likelihood of Success on the Merits**

The GVI argues that it has presented a substantial case on the merits because "[t]here is no question that the issue whether the Commerce Clause applies to the Virgin Islands has not been settled." ECF No. 82 at 3. The GVI's position is informed by its reading of the opinions issued by the Third Circuit addressing the Commerce Clause, namely *JDS Realty Corp. v. Gov't of Virgin Islands*, 824 F.2d 256 (3d Cir. 1987) and *Polychrome Int'l Corp. v. Krigger*, 5 F.3d 1522 (3d Cir. 1993).

In *JDS Realty Corp. v. Gov't of Virgin Islands*, 824 F.2d 256 (3d Cir. 1987), JDS, a Virgin Islands corporation, paid excise taxes from 1977 through 1980, as required by Section 42, on items JDS had imported into the Virgin Islands. *Id.* at 257. At the time, Section 42 imposed the tax only on items being imported into the Virgin Islands. *See id.* (citing 33 V.I.C. § 42(a) (1967)). Subsequently, JDS sought a refund of the excise taxes it had paid. *Id.* The GVI denied JDS's request. *Id.* Thereafter, JDS filed suit in the district court, alleging that

the excise tax violated the Commerce Clause. *Id.* The district court granted JDS's motion for summary judgment, *id.* at 258, but denied JDS money damages because "JDS had passed the burden of the excise taxes to its customers," *JDS Realty Corp. v. Gov't of the Virgin Islands*, 852 F.2d 66, 67 (3d Cir. 1988). The Government of the Virgin Islands appealed, and the Third Circuit affirmed. *JDS Realty Corp.*, 824 F.2d at 258, 262.

On appeal, the Third Circuit observed that, with respect to state legislation that favors local interests over out of state interests, "[t]he Supreme Court has consistently required that Congress express its intention to insulate state legislation from a commerce clause attack before the Court will uphold the legislation." *Id.* at 259. The Third Circuit concluded that the fact "[t]hat the Virgin Islands is an unincorporated territory is of no consequence in terms of the constitution's grant of affirmative power to Congress to regulate interstate commerce." *Id.* Accordingly, the Third Circuit held that "the powers granted to Congress by the commerce clause are implicit in the territorial clause," and "therefore, that the commerce clause applies to the Virgin Islands, absent an express statement to the contrary from Congress." *Id.* at 260.

The GVI petitioned the U.S. Supreme Court for certiorari. *Gov't of Virgin Islands v. JDS Realty Corp.*, 484 U.S. 999

(1988). The Supreme Court granted the petition, vacated the Third Circuit's judgment, and remanded for the Third Circuit "to consider the question of mootness." *Id.* On remand, the Third Crcuit concluded "that when monetary relief was ultimately denied, th[e] appeal became moot." *JDS Realty Corp.*, 852 F.2d at 67. Because "[n]o relief [wa]s . . . possible in th[e] case," the Third Circuit vacated the district court's judgment and directed this Court to dismiss the case. *Id.*

Several years later, the Third Circuit revisited the issue of whether the Commerce Clause applies in the Virgin Islands in *Polychrome Int'l Corp. v. Krigger*, 5 F.3d 1522 (3d Cir. 1993). In that case, the Third Circuit observed that, "[b]ecause JDS was vacated as moot, [the Third Circuit] [is] not bound by [its] earlier holding there. *Id.* at 1534 n.30. Nevertheless, the Third Circuit "f[ound] JDS persuasive." *Id.* at 1534.

> Under the Territorial Clause, Congress has power to prescribe all "needful Rules and Regulations" for territories. It has been long-settled that congressional enactments supersede any inconsistent territorial regulations. *See Late Corp. of Church of Latter-Day Saints v. United States,* 136 U.S. 1, 43, 10 S.Ct. 792, 803, 34 L.Ed. 478 (1890) (Congress has "the full and complete legislative authority over the people of the Territories and all the departments of the territorial governments."); *Sere v. Pitot,* 10 U.S. (6 Cranch.) 332, 336, 3 L.Ed. 240 (1810) ("we find Congress possessing and exercising the absolute and undisputed power of governing **332 and legislating for the territor[ies]."). Congress' broad powers under the Territorial Clause necessarily include the power to regulate commerce

> with the territories. *See Inter-Island Co. v.*
> *Territory of Hawaii,* 305 U.S. 306, 314, 59 S.Ct. 202,
> 206, 83 L.Ed. 189 (1938); *Norman's on the Waterfront,*
> *Inc. v. Wheatley,* 444 F.2d 1011, 1019 (3d Cir.1971)
> (territorial provisions of Sherman Act derive from
> Congress' powers under Territorial Clause).
>
> By necessary implication, when territorial
> enactments affect interstate or foreign commerce—a
> subject over which Congress has supreme control—
> those enactments must be scrutinized under Dormant
> Commerce Clause principles. Any other conclusion
> would mean "that an unincorporated territory would
> have more power over commerce than the states
> possess." *JDS,* 824 F.2d at 260. Although we need not
> decide whether *1535 the Commerce Clause applies
> here, we believe Commerce Clause principles are
> implicit in the Territorial Clause.

*Id.* at 1534–35.[5]

After holding that "Commerce Clause principles are implicit

in the Territorial Clause," the Third Circuit proceeded to

analyze the plaintiff's claims. *See id.* at 1535-37. Its analysis

was indistinguishable from a typical Commerce Clause analysis.

*See id.*

───────────────

[5] The GVI argues that "[t]here is disagreement among courts in the Circuits
regarding the applicability of the Commerce Clause or the Dormant Commerce
Clause to a territory of the United States, such as the Virgin Islands," ECF
No. 82 at 3, and cites *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285
(9th Cir. 1985), *United States v. Husband R.*, 453 F.2d 1054 (5th Cir. 1971),
and *Buscaglia v. Ballester*, 162 F.2d 805 (1st Cir. 1947). In *Polychrome*, the
Third Circuit noted that neither *Sakamoto* nor *Husband R.* "change[d] [its]
conclusion" because "[n]either court considered whether Commerce Clause
principles were implicit in the Territorial Clause." *Polychrome Int'l Corp.*,
5 F.3d at 1535 n.31. The Third Circuit also noted that, in *Trailer Marine*
*Transport Corp. v. Rivera Vazquez,* 977 F.2d 1 (1st Cir.1992), "the First
Circuit . . . held the Commerce Clause applies, of its own force, to the
Commonwealth of Puerto Rico," overruling *Buscaglia. See id.*

The GVI is correct that the question of whether the Commerce Clause applies, of its own force, to the Virgin Islands, is unsettled. Significantly, however, it is well-settled that "Commerce Clause principles are implicit in the Territorial Clause." *See id.* at 1535. An analysis of a claim that territorial legislation violated those Commerce Clause principles is identical to an analysis of a claim under the Commerce Clause. The Court is aware of no intervening legislation from Congress that would abrogate those principles.

Significantly, the analysis undertaken by the Court in its September 28, 2018, Judgment and Memorandum Opinion was consistent with that undertaken by the Third Circuit in *JDS* and *Polychrome*. As the GVI has presented no authority suggesting a contrary conclusion, and the Court is aware of none, the Court finds that the GVI is unlikely to prevail on the merits.

## 2. Irreparable Harm

The GVI asserts that "excise taxes on imports is a stable and reliable revenue source for the Government of the Virgin Islands. Loss of this revenue stream will have significant impact on the already strained finances of the government." ECF No. 82 at 8. Hodge testified that, historically, the GVI has collected an average of $20 million in excise taxes a year. As

of November 15, 2018, the GVI had collected $39 million in excise taxes for 2018.

In order for a moving party to satisfy its burden of showing irreparable harm, it must make a "clear showing of immediate irreparable injury, or a presently existing actual threat." *Acierno v. New Castle County*, 40 F.3d 645, 655 (3d Cir. 1994) (quoting *Ammond v. McGahn*, 532 F.2d 325, 329 (3d Cir. 1976)). Additionally, the harm must be "imminent." *Punnett v. Carter*, 621 F.2d 578, 587 (3d Cir. 1980). It must not be speculative and cannot occur in some indefinite future." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 488 (3d Cir. 2000). The nature of the harm must be such that money damages alone cannot atone for it. *Kos Pharmaceuticals, Inc.*, 369 F.3d at 727-28 (quoting *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998)).

"As a general matter, because monetary injury can be estimated and compensated, the likelihood of such injury usually does not constitute irreparable harm." *Brenntag Int'l Chem., Inc. v. Bank of India,* 175 F.3d 245, 249 (2d Cir.1999); *see also Jayaraj v. Scappini*, 66 F.3d 36, 39 (2d Cir. 1995) ("[W]here monetary damages may provide adequate compensation, a preliminary injunction should not issue."). As the Supreme Court has explained, a key factor in determining whether harm is

"irreparable" is whether "adequate compensatory or other corrective relief will be available at a later date." *Sampson v. Murray,* 415 U.S. 61, 90 (1974).

Here, while the harm claimed by the GVI is monetary in nature, the potential harm appears to encompass significantly more money than is actually at stake in this litigation. Further, while the GVI would be adequately compensated for Reefco's judgment if the GVI prevails on appeal, it would appear to have no mechanism for compensation of the excise taxes it might be forced to forgo during the pendency of the appeal. Accordingly, given the apparent unavailability of compensation for uncollected excise taxes, this type of monetary injury could constitute irreparable harm.

The GVI has presented evidence that it historically collects an average of $20 million a year in excise taxes. However, the GVI has not established what percentage of the GVI's total revenue stream excise taxes account for, i.e., the significance of the excise tax in relation to other taxes and sources of revenue. Further, the GVI continued to collect excise taxes from the date of the Court's Judgment, September 28, 2018, through November 15, 2018, and has indicated that it expects to fix the Commerce Clause deficiency in Section 42 by December 1, 2018.

### 3. Substantial Injury to other Parties Interested in the Proceeding

The GVI asserts that the public in general is another party interested in this proceeding. The focus of the inquiry in the third factor is the injury to the other parties directly involved in the litigation. *See, e.g.*, *Republic of Philippines*, 949 F.2d at 662-63. The public's interest is more appropriately considered under the fourth factor.

Here, the only other party directly involved in this proceeding is Reefco. If Reefco were required to pay excise taxes later determined by the Third Circuit to be in violation of the dormant Commerce Clause, nothing would prevent Reefco from pursing another refund action. As such, any harm suffered by Reefco as a consequence of a stay would not be "irreparable." *See Jayaraj*, 66 F.3d at 39 ("[W]here monetary damages may provide adequate compensation, a preliminary injunction should not issue.").

### 4. The Public Interest

The GVI asserts:

> The interest of the public weighs heavily in the continued operation of the Government and ensuring that the provision of essential services are not curtailed or significantly reduced by the Government's inability to collect taxes. Granting a stay pending appeal is in the public interest because it will simply preserve the status quo while the appellate court considers the merits of the Defendants' appeal.

ECF No. 82 at 9.

A functioning government is clearly in the public's interest, and a functioning government certainly requires money. The GVI has provided the Court with no information regarding the amount of money it collects from excise taxes, nor how that amount compares to other revenue streams available to the GVI. It could hardly be disputed, however, that excise taxes are the only source of government revenue. *See Berne Corp. v. Gov't of the Virgin Islands*, No. CIV. 2000-141, 2008 WL 4371518, at *5 (D.V.I. Sept. 18, 2008) (The Defendants claim that a stay will serve the public interest by permitting the issuance of tax bills, the collection of revenues and the provision of services to the public. . . . [T]he Court does not dispute the need to collect revenues. [But there are] various other means by which the Defendants may currently collect revenues, including via income, corporate and gross receipts taxes. The Defendants do not contend—nor could they—that property taxes are the only source of government revenue."). In addition, the Court notes that the GVI plans to rectify the deficiency in Section 42 that the Court identified by collecting additional excise taxes on locally manufactured goods. To the extent that the public's interest favors continued collection of excise taxes on imported items, the public's interest more strongly favors continued

collection of excise taxes on imported items *in addition to*
collection of excise taxes on locally manufactured items.
Further, the public has a strong interest in paying only those
taxes that comport with the Constitution and which are
administered in accordance with the very territorial laws
establishing such taxes.

A more specific portion of the public--importers that pay
excise taxes and local manufacturers that do not--has a more
weighty interest at stake. The interest of importers would favor
not issuing a stay, as their interest is certainly in not paying
a discriminatory excise tax. The interest of local manufacturers
would favor issuing a stay, as their interest would be not
paying an excise tax. Significantly, for the later group,
Section 42 currently requires that local manufacturers pay the
excise tax. The issue in this litigation is the GVI's failure to
enforce that obligation. Given these circumstances, the Court
finds the interest of local manufacturers weighs less heavily
than that of importers.

Considering the four factors together, the Court holds that
the GVI has failed to meet its burden. *See Jackson v. Danberg*,
656 F.3d 157, 165 n.11 (3d Cir. 2011) ("Because we conclude that
Plaintiffs have not demonstrated a likelihood of success on the
merits, we need not address the other factors required for a

stay of an execution."); *Blankenship v. Boyle*, 447 F.2d 1280,

1280 (D.C. Cir. 1971) ("Although the applicant demonstrates

irreparable injury if the stay is denied, we conclude that it

fails to provide a sufficient showing of likelihood of success

on the merits of the appeal to warrant the requested relief.").

## B. Enforcement of the Court's Declaratory Judgment

The Court entered Judgment in this matter pursuant to the

Declaratory Judgment Act, which provides, in relevant part:

> In a case of actual controversy within its
> jurisdiction, . . . any court of the United States,
> upon the filing of an appropriate pleading, may
> declare the rights and other legal relations of any
> interested party seeking such declaration, whether
> or not further relief is or could be sought. Any such
> declaration shall have the force and effect of a
> final judgment or decree and shall be reviewable as
> such.

28 U.S.C. § 2201(a). "[T]he express purpose of the Federal

Declaratory Judgment Act was to provide a milder alternative to

the injunction remedy." *Alli v. Decker*, 650 F.3d 1007, 1014 (3d

Cir. 2011) (internal quotation marks omitted). In accordance

with this purpose, "[a] declaratory judgment is simply a

statement of rights, not a binding order supplemented by

continuing sanctions." *Steffel v. Thompson*, 415 U.S. 452, 482,

94 S. Ct. 1209, 1227, 39 L. Ed. 2d 505 (1974) (J. Rehnquist,

concurring); *see also Kennedy v. Mendoza-Martinez*, 372 U.S. 144,

155 (1963) ("[The statute] was declared unconstitutional, but

without even an injunctive sanction against the application of
the statute by the Government to Mendoza-Martinez. Pending
review in the Court of Appeals and in this Court, the Government
has been free to continue to apply the statute.").

Here, the Court declared that Section "42--as interpreted
and enforced by the Virgin Islands Bureau of Internal Revenue--
violates the Commerce Clause." *See* ECF No. 79 at 2. While the
GVI has begun efforts to bring Section 42 into compliance with
the Court's Judgment, those efforts are incomplete and the GVI
continues to collect excise taxes in the manner that the Court
declared was unconstitutional. Importantly, while the GVI
regards the Judgment as precluding the GVI from certain
collection activities, *see* ECF No. 82 at 8 ("The Court's Order,
if not limited to this case, has effectively curtailed the
Government's ability to collect revenues . . . ."), the GVI
still collects excise taxes, *Hr'g Test. of Glenford Hodge* at
11:42 P.M. on November 15, 2018 ("COURT: Have you changed any
collection efforts or your structure since issuance of the
Court's judgment? HODGE: No we haven't."). The continued
collection of excise taxes in the wake of the Court's September
28, 2018, declaration that the manner in which such collection
was undertaken violates the Constitution gives effect to neither
the letter nor spirit of the Court's Judgment.

The Declaratory Judgment Act contemplates the need for such relief as is necessary to enforce a declaratory judgment, providing, in relevant part:

> Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

28 U.S.C. § 2202. To that end, courts have recognized the authority of a trial court to enforce its declaratory judgment through injunctive relief. *See Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 177 F.3d 210, 221 (3d Cir. 1999) ("Section 2202 permits the original declaratory judgment to be supplemented either by damages or by equitable relief even long after the declaratory judgment has been entered, provided that the party seeking relief is not barred by laches." (internal quotation marks omitted); *Morris v. Travisono*, 509 F.2d 1358, 1362 (1st Cir. 1975) ("The district court acted within its power and did not err in concluding that injunctive relief was necessary and proper to enforce its declaratory judgment and decree . . . ."). While it is clear that the Court may enforce its declaratory judgment, the GVI's filing of a Notice of Appeal raises the issue of whether the Court retains jurisdiction to enforce its judgment.

The Court's continued jurisdiction may be in issue in light of the general rule "that 'the filing of a notice of appeal confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.'" *Sheet Metal Workers' Int'l Ass'n Local 19 v. Herre Bros.*, 198 F.3d 391, 394 (3d Cir. 1999) (alterations omitted) (quoting *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58 (1982)). "A district court does not regain jurisdiction until the issuance of the mandate by the clerk of the court of appeals." *United States v. Rodgers*, 101 F.3d 247, 251–52 (2d Cir. 1996).

The rule divesting a district court of jurisdiction is "not based on statutory provisions or the rules of procedure." *RCA Corp. v. Local 241, Int'l Fed'n of Prof'l & Tech. Engineers, AFL-CIO*, 700 F.2d 921, 924 (3d Cir. 1983) (internal quotation marks omitted) (quoting *United States v. Leppo,* 634 F.2d 101, 104 (3d Cir.1980)). Rather, the rule is a "judge-made rule [that] has the salutary purpose of preventing the confusion and inefficiency which would of necessity result were two courts to be considering the same issue or issues simultaneously." *Venen v. Sweet*, 758 F.2d 117, 120–21 (3d Cir. 1985). "Hence, its application is guided by concerns of efficiency and is not automatic." *Rodgers*, 101 F.3d at 251 (2d Cir. 1996).

Generally, the rule should only apply to divest the district court of jurisdiction over "those aspects of the case involved in the appeal." *See Venen*, 758 F.2d at 120 (3d Cir. 1985); *see also Warren v. Am. Bankers Ins. of FL*, 507 F.3d 1239, 1242 (10th Cir. 2007) (explaining that "a notice of appeal divests the district court of jurisdiction over *substantive claims*" (emphasis added)). Accordingly, several exceptions to the rule have been recognized:

> A district court, during the pendency of an appeal is not divested of jurisdiction to determine an application for attorney's fees. Neither is it without jurisdiction to issue orders regarding the filing of bonds or supersedeas bonds, or to modify, restore, or grant injunctions [under Federal Rule of Civil Procedure 62]. A district court also retains jurisdiction to issue orders with reference to the record on appeal and to vacate a bail bond and order arrest.

*Venen*, 758 F.2d at 121 (citations omitted); *see also Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1314 (3d Cir. 1994) ("[D]uring the pendency of an appeal, the district court may review applications for attorney's fees, grant or modify injunctive relief, issue orders regarding the record on appeal, and vacate a bail bond and order arrest.").

Significantly, a district court also retains "jurisdiction to act to enforce its judgment so long as the judgment has not been stayed or superseded." *N.L.R.B. v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 588 (6th Cir. 1987) (quoting *Nicol v. Gulf Fleet*

*Supply Vessels, Inc.,* 743 F.2d 298, 299 n. 2 (5th Cir.1984)).

*see also Walker v. Univ. of Colorado Bd. of Regents*, 162 F.3d

1175 (10th Cir. 1998) ("[I]f a dismissal without prejudice is to

be effective, the district court must retain residual

jurisdiction to enforce the terms of the judgment . . . .").

Orders entered in aid of enforcement, however, must "not alter

or enlarge the scope of its judgment pending appeal." *Cincinnati*

*Bronze, Inc.*, 829 F.2d at 588; *see also Greater Potater*

*Harborplace, Inc. v. Jenkins*, 935 F.2d 267 (4th Cir. 1991) ("An

effective notice of appeal divests a district court of

jurisdiction to tamper with the judgment . . . ."). In this

respect, courts should recognize the "crucial distinction

between *expansion* and *enforcement* of judgments." *City of*

*Cookeville, Tenn. v. Upper Cumberland Elec. Membership Corp.*,

484 F.3d 380, 394 (6th Cir. 2007) (quoting *Am. Town Ctr. v. Hall*

*83 Assocs.,* 912 F.2d 104, 110 (6th Cir.1990)).

In *United Teacher Assocs. Ins. v. Union Labor Life Ins.*

*Co.*, 414 F.3d 558 (5th Cir. 2005), United Teacher Associates

Insurance Company ("United Teacher") sued the Union Labor Life

Insurance Company and Union Standard of America Life Insurance

Company (collectively, the "Insurers") for fraud. *Id.* at 560.

The Insurers filed a counterclaim seeking "a declaration that

certain acquisition agreements between the parties were valid

and binding." *Id.* The district court entered judgment in favor

of the Insurers, declaring that the agreements were valid and

binding and that United Teacher owed the Insurers money under

the agreements. *Id.* at 563. United Teacher appealed the district

court's judgment. *Id.* at 560. After the United Teacher's notice

of appeal was filed, *id.* at 572, the Insurers filed a motion for

relief under 28 U.S.C. § 2202, asking the district court to (1)

order United Teacher to pay money owed under the agreements; and

(2) order United Teacher to perform other obligations under the

agreements. *Id*. at 563. The district court denied the motion.

*Id*. The Insurers appealed. *Id.*

On appeal, United Teacher argued that the district court

lacked subject matter jurisdiction to consider the motion for

relief because it was filed after the judgment was appealed. *Id.*

at 572. The Fifth Circuit rejected that argument, explaining:

> Courts that have addressed when a motion for further
> relief may be brought under § 2202 have consistently
> held that neither the filing of an appeal nor a
> lengthy delay after the trial court's initial ruling
> terminates the court's authority to grant further
> relief pursuant to § 2202. The Supreme Court's
> decision in *Griggs v. Provident Consumer Discount
> Co.,* 459 U.S. 56 (1982), does not undermine this
> conclusion. In *Griggs,* the Supreme Court held that
> "[t]he filing of a notice of appeal is an event of
> jurisdictional significance—it confers jurisdiction
> on the court of appeals and divests the district
> court of its control *over those aspects of the case
> involved in the appeal.*" If we were to hold that the
> act of lodging an appeal of a declaratory judgment
> nullifies the prevailing party's right to seek

> further relief under § 2202, we would countermand
> *Griggs*'s statement that the filing of an appeal
> divests the district court of its control only "over
> those aspects of the case involved in the appeal."
> Here, United Teacher's appeal concerns only the
> district court's judgment and award of costs
> pertaining to [the Insurers'] claim. Accordingly,
> United Teacher's separate argument that the district
> court was divested of jurisdiction over [the
> Insurers'] motion for further relief under § 2202
> fails.

*Id.* 572-73 (5th Cir. 2005) (citations omitted); *see also Horn &*

*Hardart Co. v. Nat'l Rail Passenger Corp.*, 843 F.2d 546, 548

(D.C. Cir. 1988) ("Though *Overnite* states the general rule that

an appeal divests a district court of jurisdiction, the court

qualifies this rule by recognizing that jurisdiction can be

'reserved' by statute. The Declaratory Judgment Act's provision

for further relief works such a reservation." (citations

omitted)).

The Court finds the Fifth Circuit's reasoning in *United*

*Teacher Assocs. Ins. v. Union Labor Life Ins. Co.*, 414 F.3d 558

(5th Cir. 2005) persuasive. As such, the Court holds that the

GVI's notice of appeal does not deprive the Court of

jurisdiction to order injunctive relief under 28 U.S.C. § 2202.

Indeed, the Court finds that such injunctive relief will aid in

executing the letter and spirit of the Court's September 28,

2018, declaratory judgment. Accordingly, the Court will enter an

injunction ordering the GVI to cease, forthwith, collecting

excise taxes in a manner inconsistent with the Court's September
28, 2018, Judgment; that is, enjoining the GVI from collecting
excise taxes in a manner that violates the Commerce Clause
principles.

The Court recognizes that the GVI is currently developing
additional collection procedures that may bring Section 42 into
compliance with the Commerce Clause. As such, if the GVI wishes
to do so, the GVI may advise the Court when it is prepared to
collect excise taxes in a manner consistent with the Court's
September 28, 2018, Judgment and Memorandum Opinion, at which
point the Court may reconsider this injunction.


S_____
            **Curtis V. Gómez**
            **District Judge**